UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Court File No. 26-mj-85 |
| Plaintiff, | |
| v. | **MOTION FOR EXPEDITED BRADY DISCLOSURES** |
| Moustaphe Youssouf, | |
| Defendant. | |

On January 21, 2026, Defendant was racially profiled, subjected to an unconstitutional stop, assault, and arrest, and ultimately charged with a misdemeanor violation of 18 U.S.C. § 111. Defendant has not yet received any discovery in this case. Defendant respectfully requests that the Court order expedited disclosures related to ICE's racial profiling and assault of Defendant. Defendant intends to bring a motion to dismiss for outrageous government conduct and these materials – which must be disclosed regardless pursuant to the Court's *Brady* Obligation Order – are relevant to Defendant's motion and for that reason expedited disclosure is warranted here.

## BACKGROUND

**I.   ICE HAS A WELL-ESTABLISHED PATTERN AND PRACTICE OF RACIALLY PROFILING SOMALI MINNESOTANS.**

ICE has a well-documented history of racially profiling Somali individuals in Minnesota for detention and arrest, regardless of their status as United States citizens. President Trump kicked off Operation Metro Surge with a series of racist comments against Somali Minnesotans that set the stage for widespread racial profiling and abuse of our

Somali community. On November 21, 2025, Trump stated on Truth Social: "Somali gangs are terrorizing the people of [Minnesota] . . . . send them back to where they came from. IT'S OVER."[1]

In early December, in Oval Office remarks, President Trump stated: "We're going to go the wrong way if we keep taking in garbage into our country. Ilhan Omar is garbage. She's garbage. Her friends are garbage. These aren't people that work. These aren't people that say, 'Let's go, come on. Let's make this place great.' These are people that do nothing but complain. They complain, and from where they came from, they got nothing."[2]

In January, Trump stated to reporters: "We're cracking down on more than $19bn in fraud that was stolen by Somalian bandits. Can you believe that? Somalia – they turned out to be higher IQ than we thought. I always say these are low-IQ people. How did they go into Minnesota and steal all that money?"[3]

Unsurprisingly, ICE took President Trump's comments as a mission statement for their work here. This resulted in ICE profiling and abusing numerous Minnesotans of Somali descent. For example, on December 10, 2025, Minnesotan, U.S. citizen, and Somali-American Mubashir Hussen was working at a mental health clinic in South Minneapolis. Hussen went to take his lunch break, and when he stepped outside was

---

[1] https://www.cnn.com/2025/12/03/us/immigration-trump-somali-migrants-minnesota

[2] https://www.npr.org/2025/12/02/nx-s1-5629305/trump-says-he-doesnt-want-somalis-in-the-u-s-urges-them-to-go-back-to-their-homeland-and-fix-it

[3] https://www.washingtonpost.com/nation/2026/01/21/trump-davos-somali-intelligence/

immediately accosted by several ICE agents. Hussen told the ICE agents he is a U.S. citizen, but that did not dissuade them. They attacked him and arrested him despite his repeated protestations that he is a U.S. citizen. Hussen's employer provided the ICE agents with Hussen's passport card. They ignored it. They drove him to the Whipple Building where he was photographed, shackled and fingerprinted. After several hours, they released him. The agents clearly accosted Hussen based on his appearance, as they had no other reason to do so and could not articulate one. *See* Declaration of Mubashir Hussen, *Hussen, et al. v. Noem, et al.*, Case No. 26-cv-324, ECF No. 34 (D. Minn., filed Jan. 16, 2026). Many others have suffered the same unconstitutional detention and humiliation.[4]

---

[4] *See, e.g.,* **Declaration of Mahamed Rufai Eydarus**, *Hussen, et al. v. Noem, et al.*, Case No. 26-cv-324, ECF No. 42 (D. Minn., filed Jan. 16, 2026) (describing racial profiling of Somali family); **Declaration of Said Osman**, Case No. 26-cv-324, ECF No. 29 (D. Minn., filed Jan. 16, 2026) (describing Somali-American U.S. citizen grabbed off the street without explanation); **Declaration of Ali Dashir**, Case No. 26-cv-324, ECF No. 32 (D. Minn., filed Jan. 16, 2026) (describing Somali-American U.S. citizen racially profiled as he left his apartment building and detained for 30 minutes despite producing his passport); **Declaration of A.A.**, Case No. 26-cv-324, ECF No. 37 (D. Minn., filed Jan. 16, 2026) (describing Somali Minnesotan racially profiled and arrested as he left a Wal-Mart despite his lawful permanent resident status); **Declaration of F.A.**, Case No. 26-cv-324, ECF No. 93-2 (D. Minn., filed Feb. 2, 2026) (describing racial profiling and unconstitutional traffic stop of Somali-American U.S. citizen); **Declaration of M.M.**, Case No. 26-cv-324, ECF No. 92-7 (D. Minn., filed Feb. 2, 2026) (describing racial profiling, unconstitutional stop, and assault of Somali U.S. citizen); **Declaration of H.S.**, Case No. 26-cv-324, ECF No. 92-5 (D. Minn., filed Feb. 2, 2026) (describing racial profiling, unconstitutional stop, arrest and assault of Somali U.S. citizen); *Suzanne Gamboa, et al.*, "Immigration officers around Minneapolis are approaching people and demanding proof that they're US. Citizens", NBC News (Jan. 16, 2026), https://www.nbcnews.com/news/us-news/ice-awroaching-people-minneapolis-demanding-proof-citizenship-rcna254247; *Sofia Barnett, et al.*, "Allegations of racial profiling of U.S. citizens on the rise as ICE surge expands in Minnesota," Star Tribune (Jan. 18, 2026), https://www.startribune.com/allegations-of-racial-profiling-of-us-citizens-on-the-rise-as-ice-surge-expands-in-minnesota/601564653.

As even Justice Kavanaugh has endeavored to make clear: "The Fourth Amendment requires that immigration stops must be based on reasonable suspicion of illegal presence, stops must be brief, arrests must be based on probable cause, and officers must not employ excessive force. Moreover, the officers must not make interior immigration stops or arrests based on race or ethnicity." *Trump v. Illinois*, 146 S.Ct. 432, 436 n. 4 (2025) (Kavanaugh, J., concurring). ICE's detention and arrest of Mr. Youssouf broke all these rules.

II. **ICE RACIALLY PROFILED MR. YOUSSOUF.**

On January 21, 2026, Mr. Youssouf was driving his mother home from work in St. Cloud, in a car borrowed from a friend. Mr. Youssouf is a U.S. citizen. So is his mother. So is the person who owns the car. Mr. Youssouf was driving safely and lawfully. ICE agents saw Mr. Youssouf and because he appeared to be Somali decided to stop him. The affidavit submitted in support of the Complaint in this matter states that ICE agents stopped Mr. Youssouf because his car was "registered to an individual on their law enforcement action list." This is a lie, manufactured to cover for ICE's blatantly unconstitutional racial profiling of Mr. Youssouf.

When ICE approached the driver's side window, Mr. Youssouf rolled it down and told them he was a U.S. citizen. ICE responded by telling him to "get the fuck out of the car." He quite properly refused. Again, he told them, he is a U.S. citizen. Again, they told him to "get the fuck out of the car!" An ICE agent pepper sprayed Mr. Youssouf through the open window. Agents opened the door and pulled Mr. Youssouf out, throwing him onto the ground. They handcuffed him, shackled him, and put him in an ICE vehicle. All the while Mr. Youssouf, his mother, and his brother – who had come to the scene prior to

Mr. Youssouf being pulled from the car – told the ICE agents that Mr. Youssouf is a citizen. The agents made no attempt to investigate whether or not Mr. Youssouf is a citizen. They simply threw him in their vehicle and drove him to the Whipple Building. Several hours later, apparently finally realizing that Mr. Youssouf is in fact a citizen, they released him.[5]

Mr. Youssouf does not have a criminal record. There are no outstanding warrants for his arrest. The government does not allege he was violating any laws when he was pulled over (or even that it has the authority to enforce Minnesota's traffic laws). The car Mr. Youssouf was driving is registered to another Somali-American who is a U.S. citizen. That person has no criminal record and no outstanding warrants.

Tellingly, after agents learned Mr. Youssouf's identity, they did not release him and continue their "search" for this other person supposedly on their "law enforcement action list" to whom the car was registered. They did not arrest this other person, go to his home (and his address would have been readily available to agents through his vehicle registration), or make any other efforts to apprehend him. That is because the government's pretext for stopping Mr. Youssouf was and is a blatant lie.[6]

---

[5] The affidavit supporting charges against Mr. Youssouf lists a series of assaultive acts by Mr. Youssouf. These allegations are false and will be proven as such in this case, much has ICE agents have been proven liars again and again in Minnesota and elsewhere.

[6] This is far from the first time that DHS agents in Minnesota have advanced blatant and shameless lies about Minnesotans. Indeed, the entire agency is infected with a culture of mendacity. *See, e.g., Tincher v. Noem,* No. 0:25-CV-4669 (KMM/DTS), 2026 WL 125375, at *26 (D. Minn. Jan. 16, 2026) (finding that the sworn declaration of ICE Director Easterwood was "largely contradicted" by video evidence); *Chicago Headline Club, et al. v. Noem, et al.*, No. 25 cv 12173, 2025 WL 3240782, at *6 (N.D. Ill. Nov. 20, 2025) (documenting numerous false statements by ICE agents and officials and decrying their "widespread misrepresentations"); https://www.npr.org/2026/02/13/nx-s1-5713947/

ICE stopped Mr. Youssouf because agents racially profiled him. They compounded this Fourth Amendment violation by assaulting and wrongfully arresting Mr. Youssouf. The attack on Mr. Youssouf's constitutionally guaranteed liberties has culminated in this ill-founded prosecution.

## ARGUMENT

**I.     EXPEDITED DISCLOSURES ARE WARRANTED HERE.**

On January 29, 2026, the Court issued a *Brady* Obligation Order in this case, ordering that the government turn over, in a timely manner, "all exculpatory evidence-that is, evidence that favors the defendant or casts doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny…" ECF No. 6.

The government's obligations under *Brady* apply to both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). It includes evidence in the hands of police as well as in the hands of prosecutors. *Kyles v. Whitley,* 514 U.S. 419 (1995).

The Sixth Amendment guarantees a defendant's ability to impeach a witness based on racial bias. *E.g., United States v. Bryant*, 5 F.3d 474, 476 (10th Cir. 1993) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)); *United States v. Bernal-Sanchez*, 2023 WL 7179469, at *1 (9th Cir. Nov. 1, 2023) (explaining evidence of Border Patrol agent's racial bias or participation in racist Facebook group could have been used for impeachment); *United States v. Boender*, 2010 WL 811296, at *4 (N.D. Ill. Mar. 3, 2010) ("[A]n accused may

---

immigration-agents-lie-minnesota; https://www.usatoday.com/story/news/nation/2026/01/26/greg-bovino-agents-victims-pretti-minneapolisshooting/88361659007.

6

introduce evidence that an officer has committed misconduct where it can be used to impeach a witness."); *see also Meyler v. Town of Ocean City*, 2023 WL 5984406, at *3 (D. Md. Sept. 14, 2023) ("Past incidents of racial discrimination by the Defendant Officers, should any exist, may be relevant to the Officers' state of mind, and might be admissible for impeachment or another purpose.") Thus, potential evidence of racial bias or racist practices must be disclosed under *Brady*. For this reason alone, the government must provide Mr. Youssouf with the requested material.

Moreover, disclosure of such evidence is appropriate where a defendant advances a colorable claim of outrageous government conduct in violation of the Fourteenth Amendment. For example, in *Unites States v. Fox*, the court allowed "wide-ranging discovery of record maintained by the Nebraska State Patrol" regarding the defendant's allegations of racial profiling. 276 F.Supp.2d 996, 999 (explaining that "the material sought is probably relevant, probably admissible, and specific enough that the request can be intelligently evaluated").

Accordingly, Mr. Youssouf respectfully requests the Court order the following discovery be produced on an expedited basis to enable the prompt filing of his motion to dismiss for outrageous government conduct:

(1) Disclosure of the identities of the agents who stopped, arrested, and transported him to the Whipple Building, including but not limited to the identities of the individuals listed as DO 1 and DO 2 in Special Agent Berger's affidavit. *See* ECF No. 1-1;

(2) Disclosure of all written reports and communications, whether by text, email, or any other means, related to the arrest of Mr.

7

        Youssouf, including any communications sent using the personal phones of any ICE, ERO, or CBP agent;[7]

(3)    Disclosure of all information regarding the "law enforcement action list" used to justify the stop of Mr. Youssouf, including the specific information on the list that justified Mr. Youssouf's stop, as well as any DHS, ICE, ERO, or CBP policies or procedures related to the List, and any training or instruction provided regarding use of the List;

(4)    Disclosure of all communications, whether by text, email, or any other means, by the agents who stopped, arrested, and/or transported Mr. Youssouf to the Whipple Building, regarding Somali individuals;

(5)    Disclosure of all communications, whether by text, email, or any other means, by any DHS, ICE, ERO, or CBP supervisory agent or officer deployed during Operation Metro Surge related to the identification, detention, or arrest of Somali individuals.

## CONCLUSION

Defendant respectfully requests that the Court order disclosure of the above-requested materials and require that the government produce the requested materials within fourteen days of the Court's order to enable Defendant's prompt filing of his motion to dismiss and end the government's attack on his civil liberties.

---

[7] "ICE" refers to Immigration Customs and Enforcement agents; "ERO" refers to Enforcement and Removal Operations agents; "CBP" refers to Customs and Border Patrol agents. It is unclear which agents/agencies were involved in Mr. Youssouf's detention and arrest.

| | |
|---|---|
| Dated: February 15, 2026 | */s/ Kevin C. Riach* |
| | Kevin C. Riach (#0389277) |
| | 125 Main St. SE, Suite 339 |
| | Minneapolis, MN 55412 |
| | Telephone: 612.203.8555 |
| | kevin@riachdefense.com |

**Attorney for Defendant**